UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POST HOLDINGS, INC., and POST FOODS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 18-CV-1741

JURY TRIAL DEMANDED

## COMPLAINT

For their Complaint against Defendant Liberty Mutual Fire Insurance Company ("Liberty"), Plaintiffs Post Holdings, Inc. ("Post Holdings") and Post Foods, LLC ("Post Foods") (collectively, "Post") state and aver as follows.

**A.     PARTIES**

1.     Post Holdings is incorporated in Missouri and maintains its principal place of business in St. Louis, Missouri.

2.     Post Holdings is a holding company. Post Holdings' subsidiaries offer branded grocery, food service, food ingredient, private label, refrigerated and active nutrition food products on a retail basis.

3.     Post Foods is an indirect wholly-owned subsidiary of Post Holdings. In particular, Post Foods is a wholly-owned subsidiary of Post Consumer Brands, LLC ("PCB"), which, in turn, is a wholly-owned subsidiary of Post Holdings.

4.  Defendant Liberty Mutual Fire Insurance Company ("Liberty") is an insurance company that is incorporated in Massachusetts and maintains its principal place of business in Boston, Massachusetts.

## B.  JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over the dispute based on 28 U.S.C. § 1332, in that the dispute is between completely diverse parties and is for more than $75,000, exclusive of interest and costs.

6.  This Court has personal jurisdiction over Liberty because, among other things, it transacts business in the State of Missouri, makes contracts in the State of Missouri (including the Policies referred to below), and contracts to insure businesses (including Post Holdings and Post Foods) and other persons, property and risks located within Missouri.

7.  This Court is an appropriate venue for this action under 28 U.S.C. § 1391(b).

## C.  THE POLICIES

8.  Liberty issued a series of commercial general liability policies to Post Holdings, including policies spanning the policy periods of (a) October 1, 2014, to October 1, 2015, Policy No. TB2-641-444457-034 (the "2014-2015 Policy"), and (b) October 1, 2015, to October 1, 2016, Policy No. TB2-641-444457-035 (the "2015-2016 Policy") (collectively, the "Policies").[1]

9.  Post Holdings and Post Foods are each a "Named Insured" under the Policies.

10. The Policies provide, in relevant part, that Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

---

[1] A copy of the 2014-2015 Policy is submitted herewith as Exhibit 1, and a copy of the 2015-2016 Policy is submitted herewith as Exhibit 2.

11. Further, the Policies state that Liberty "will have the right and duty to defend the insured against any 'suit' seeking these damages."

12. To be covered, the Policies require that the "bodily injury" be caused by an "occurrence" that occurs during the policy period and within the coverage territory.

13. The Policies provide that "'bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

14. The Policies provide that "'Suit' means a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged."

15. The Policies provide that "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**D.   POST HOLDINGS NOTIFIED LIBERTY OF THE UNDERLYING LAWSUIT, AND LIBERTY DENIED COVERAGE**

16. On August 29, 2016, *Debbie Krommenhock, et al., v. Post Foods LLC*, Case No. 3:16-cv-04958-WHO (N.D. Cal.) (the "Underlying Lawsuit"), a putative class action, was filed against Post Foods in the United States District Court for the Northern District of California.

17. The Underlying Lawsuit was served on Post Foods on September 1, 2016. The plaintiffs in the Underlying Lawsuit filed a First Amended Complaint on November 14, 2016.

18. Post Holdings notified Liberty of the Underlying Lawsuit in a timely manner.

19. By letter dated December 16, 2016, based upon its review of the original Complaint and the First Amended Complaint in the Underlying Lawsuit, Liberty informed Post that "Liberty Mutual has concluded that insurance coverage is unavailable for the Claim under the Policies."

20. The plaintiffs in the Underlying Lawsuit filed a Second Amended Complaint on September 14, 2017. A copy of the Second Amended Complaint in the Underlying Lawsuit is attached as Exhibit 3; a copy of the First Amended Complaint is attached as Exhibit 4.

21. The original Complaint, First Amended Complaint, and Second Amended Complaint (collectively, the "Underlying Complaint") do not differ in any manner that is material to Liberty's duty to defend under the Policies.[2]

### E. LIBERTY HAS BEEN OBLIGATED TO DEFEND POST FOODS SINCE THE INCEPTION OF THE UNDERLYING LAWSUIT

22. The Underlying Complaint alleges that Post Foods has marketed a number of cereal products based on health and wellness claims that were deceptive, false, or otherwise unlawful. (Exh. 3 ¶ 3; Exh. 4 ¶ 3.) The Underlying Complaint, for example, alleges that Post Foods marketed "high-sugar cereals with health and wellness claims." (Exh. 3 ¶ 2; Exh. 4 ¶ 2.)

23. The Underlying Complaint alleges, among other things, that exposure to fructose and excess sugar through purchase of Post Foods' allegedly "high-sugar" cereals "can have dire physiological consequences, acting as a chronic, dose-dependent liver toxin, overloading the liver and causing chronic metabolic disease, also sometimes called metabolic syndrome, a cluster of symptoms that, when present together, increase a person's risk of chronic disease like cardiovascular disease and type 2 diabetes." (Exh. 3 ¶ 27; Exh. 4 ¶ 27.) The Underlying Complaint alleges other physiological consequences that result from the purchase of cereals. (Exh. 3 ¶¶ 20-36; Exh. 4 ¶¶ 20-36.)

24. The Underlying Complaint alleges numerous physiological injuries supposedly caused by the exposure to fructose and excess sugar contained in Post Foods' cereals, including

---

[2] In the following, Plaintiffs Post Holdings and Post Foods cite to the First Amended Complaint and Second Amended Complaint to describe the Underlying Lawsuit.

4

metabolic syndrome, type 2 diabetes, cardiovascular disease, liver disease, obesity, inflammation, high blood triglycerides, abnormal cholesterol levels, hypertension, Alzheimer's disease, dementia, cognitive decline, and cancer. (Exh. 3 ¶¶ 12-36; Exh. 4 ¶¶ 12-36.)

25. For example, the Underlying Complaint alleges Post Foods' marketing of Honey Comb, a cereal, as a healthy option is "dubious" as "obscuring the detrimental effect of the cereal's consumption in promoting obesity, metabolic disease, cardiovascular disease, and other morbidity . . .." (Exh. 3 ¶ 277; Exh. 4 ¶ 282.)

26. In addition to excess sugar, the Underlying Complaint alleges that Post Foods "markets high-sugar cereals to children despite that they also contain artificial trans fat, a substance so deadly that the FDA has banned it with a phase-out deadline of 2018." (Exh. 3 ¶ 279; Exh. 4 ¶ 284.) According to the Underlying Complaint, "artificial trans fat is the single worst nutrient (the only nutrient worse than sugar) in terms of its effect on bodily health, and particularly heart health." (Exh. 3 ¶¶ 279; Exh. 4 ¶¶ 284-85.)

27. And, the Underlying Complaint alleges, Post Foods markets Waffle Crisp based on health and wellness claims, even though the cereal "contains 12g of sugar, accounting for 40% of the cereal by weight, and 40% of its calories, and contributing between 80% and 100% of children's AHA-recommended daily maximum sugar intake" and "is made with partially hydrogenated vegetable oil containing toxic artificial trans fat." (Exh. 3 ¶ 280; Exh. 4 ¶¶ 284-85.)

28. The Underlying Complaint alleges that "the Post high-sugar cereals are especially dangerous to the health of those who regularly consume them" in consideration of "consumers' actual eating habits," which may involve consumption of more than a single serving per meal. (Exh. 3 ¶ 321-23; Exh. 4 ¶¶ 332-34).

5

29. The Underlying Complaint alleges that the class representatives and putative class purchased the cereals in reliance on the allegedly improper marketing. (Exh. 3 ¶¶ 334-35, 363-64; Exh. 4 ¶¶ 347-48, 376-77.)

30. The Underlying Complaint states claims under statutory causes of action, including alleged violations of the California Consumers Legal Remedies Act. (Exh. 3 ¶¶ 385-89; Exh. 4 ¶¶ 398-402.) This Act states, in part, that "[a]ny consumer who suffers any damage as the result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain . . . (1) Actual damages." Cal. Civ. Code § 1780(a).

31. Plaintiffs in the Underlying Lawsuit can prevail on a claim under the California Consumers Legal Remedies Act by proving a "deceptive" practice, as that term is used in the statute. To demonstrate a deceptive practice, a plaintiff does not need to prove that actual damages were "intended" or "expected" by the defendant.

32. The Underlying Complaint alleges that the intent of the practices challenged in the Underlying Lawsuit, at least in part, was to increase "the prices, sales, and market share of its cereals." (Exh. 3 ¶ 314; Exh. 4 ¶¶ 325.)

33. The Underlying Complaint expressly alleges that the class representative plaintiffs "suffered bodily injury in the form of increased risk of [cardiovascular heart disease], stroke, and other morbidity" as a result of Post Foods' acts. (Exh. 3 ¶¶ 342, 371; Exh. 4 ¶¶ 355, 384.)

34. The class period for the putative class is August 29, 2012 to the time of class notification. (Exh. 3 ¶ 372; Exh. 4 ¶ 385.)

6

35. The damages sought by the plaintiffs in the Underlying Lawsuit, denominated by them as "bodily injury," are encompassed by the definition of "bodily injury" contained in the Policies.

36. The Underlying Complaint seeks, among other things, "[a]n Order requiring Post to pay all statutory, compensatory, and punitive damages permitted under the causes of action alleged herein." (Ex. 1 ¶ 411(f); Exh. 4 ¶ 424(f)).

37. The plaintiffs in the Underlying Lawsuit allege conduct by Post Foods that is an "occurrence," as that term is used in the Policies.

38. The "bodily injury" alleged in the Underlying Lawsuit occurred during the policy periods of the Policies and within the coverage territory of the Policies.

39. Post Holdings has paid all premiums due under the Policies. Otherwise, Post has satisfied all conditions precedent to coverage and the pursuit of the claims alleged herein.

## COUNT I – BREACH OF CONTRACT

40. Post incorporates the preceding paragraphs as if fully set forth herein.

41. The Policies are valid and binding contracts.

42. The Policies provide that Liberty has the right and duty to defend Post Foods in the Underlying Lawsuit.

43. Liberty has a duty to defend in the Underlying Lawsuit because the Underlying Complaint alleges that the class representatives and putative class suffered and seek recovery for "damages because of 'bodily injury' . . . to which this insurance applies" on account of an "occurrence."

44. The injuries alleged in the Underlying Lawsuit were not "expected or intended from the standpoint of the insured," as that phrase is used in the Policies, and no other exclusions apply to preclude coverage

45. Liberty cannot show that there is "no possibility" of coverage under the Policies with respect to any part of the Underlying Lawsuit, as would be required to vitiate Liberty' duty to defend.

46. Post has provided Liberty with all information, assistance, and cooperation required under the terms of the Policies, and it has otherwise satisfied all conditions to coverage under the Policies.

47. Liberty has refused to defend Post Foods in the Underlying Litigation.

48. Liberty has breached its duty to defend under the Policies by refusing to defend Post Foods in the Underlying Litigation.

49. As a direct and proximate cause of Liberty's contractual breaches, Post has been forced to incur defense costs in excess of $2,000,000, which amount increases as the Underlying Lawsuit remains pending.

50. Accordingly, Post requests that the Court (a) award damages for all direct and consequential losses sustained as a consequence of Liberty' failure to honor the terms of the Policies, in an amount to be proven at trial; (b) award pre-judgment interest at a rate of 9% pursuant to Mo. Rev. Stat. § 408.020 and post-judgment interest at the highest rate allowed; (c) award Post its costs in bringing this action; and (d) grant such other relief as is just and equitable.

**COUNT II – DECLARATORY JUDGMENT**

51. Post incorporates the preceding paragraphs as if fully set forth herein.

52. The Policies are valid and binding contracts.

53. The Policies provide that Liberty has the right and duty to defend Post Foods in the Underlying Lawsuit.

54. Liberty has a duty to defend Post Foods in the Underlying Lawsuit because the Underlying Complaint alleges that the class representatives and putative class suffered and seek recovery for "damages because of 'bodily injury' . . . to which this insurance applies" on account of an "occurrence."

55. The injuries alleged in the Underlying Lawsuit were not "expected or intended from the standpoint of the insured," as that phrase is used in the Policies, and no other exclusions apply to preclude coverage.

56. Liberty cannot show that there is "no possibility" of coverage under the Policies with respect to any part of the Underlying Lawsuit, as would be required to vitiate Liberty's duty to defend.

57. Post has provided Liberty with all information, assistance, and cooperation required under the terms of the Policies, and it has otherwise satisfied all conditions to coverage under the Policies.

58. Liberty has refused to defend Post Foods in the Underlying Litigation.

59. There is an actual and justiciable controversy between the parties concerning whether the Policies obligate Liberty to defend Post Foods in the Underlying Litigation.

60. The Court should declare that Liberty is obligated to defend all "Named Insureds" that are defendants in the Underlying Litigation, including Post Foods, under each of the Policies, so that Liberty will be required to pay and/or reimburse Post Holding's losses as required by the Policies and provide the benefits for which Post Holdings' bargained and paid.

Accordingly, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, Post requests that the Court (a) declare that Liberty is obligated to defend all "Named Insureds," including Post Foods, that are or may become defendants in the Underlying Litigation; (b) award pre-judgment interest at a rate of 9% pursuant to Mo. Rev. Stat. § 408.020 and post-judgment interest at the highest rate allowed; (c) award Post its costs and fees in bringing this action; and (d) grant such other relief as is just and equitable.

<u>Demand for Jury Trial</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

By: <u>s/Christopher J. Leopold</u>
Scott C. Hecht, E.D. Mo. 44576MO
Christopher J. Leopold, E.D. Mo. 51407MO
Christopher B. Sevedge, E.D. Mo. 68383MO
Stinson Leonard Street LLP
1201 Walnut, Suite 2900
Kansas City, MO  64106-2150
816.842.8600 ‖ 816.691.3495 [F]
scott.hecht@stinson.com
chris.leopold@stinson.com
christopher.sevedge@stinson.com

ATTORNEYS FOR PLAINTIFFS