UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| POST HOLDINGS, INC. and <br> POST FOODS, LLC, <br><br>     Plaintiff, Counter-Defendants, <br><br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE <br> COMPANY, <br><br>     Defendants, Counter-Plaintiff. | Case No. 4:18CV1741HEA |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Partial Summary Judgment on "Pre-Tender" Defense Costs pursuant to Federal Rule of Civil Procedure 56(a) [Doc. No. 27]. Plaintiff opposes the motion. For the following reasons, both motions will be denied.

### **Facts and Background**

Liberty Mutual issued two primary commercial general liability policies (the "Policies") to Post Holdings. The first Policy, TB2-641-444457-034, was effective from October 1, 2014, to October 1, 2015. The first Policy was then renewed, TB2-641-444457-035, for the policy period of October 1, 2015, to October 1, 2016. The Policies contain a $2 million per-occurrence limit; a $2 million personal and

advertising injury limit; and a $5 million general aggregate limit. The Policies also contain a $500,000 per-occurrence deductible that was added by endorsement. This deductible applies to all damages and supplementary payments resulting from each occurrence under the Policies. The Policies' limits of insurance are reduced by payments made by Post under this deductible.

The Policies contain the following:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

> **(1)** How, when and where the "occurrence" or offense took place;

> **(2)** The names and addresses of any injured persons and witnesses; and

> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
> **b.** If a claim is made or "suit" is brought against any insured, you must:

> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

> **(2)** Notify us as soon as practicable.

> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**q(2)** Authorize us to obtain records and other information;

\* \* \*

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

\* \* \*

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

Post Holdings and Post Foods are each a "Named Insured" under the Policies.

On August 29, 2016, underlying claimants Debbie Krommenhock and Stephen Hadley filed a putative class action against Post Foods in the United States District Court for the Northern District of California, captioned *Debbie Krommenhock, et al. v. Post Foods LLC*, No. 16-cv-04958 (N.D. Cal.) (the "*Krommenhock* Suit"). On November 14, 2016, the plaintiffs in the *Krommenhock* Suit filed a First Amended Complaint. On September 14, 2017, the plaintiffs in the

*Krommenhock* Suit filed a Second Amended Complaint ("Second Amended Complaint").

Post expressly concedes that the "original Complaint, First Amended Complaint, and Second Amended Complaint (collectively, the 'Underlying Complaint') do not differ in any manner that is material to Liberty Mutual's duty to defend under the Policies."

The *Krommenhock* Suit is a putative class action brought on behalf of California consumers. It alleges causes of action under California's False Advertising Law, Consumer Legal Remedies Act, Unfair Competition Law, and causes of action for breaches of express and implied warranties.

On September 8, 2016, Post initially "tendered" a claim ("Claim") to Liberty Mutual for coverage in connection with the *Krommenhock* Suit.

Representatives of both Liberty Mutual and Post participated in a teleconference on December 5, 2016 to discuss the availability of coverage in connection with the *Krommenhock* Suit.

Following the teleconference, Liberty Mutual sent a letter dated December 16, 2016 to Jeanie Wescott, Director of Risk Management for Post Holdings ("Claim Withdrawal Agreement"), in which Liberty Mutual set forth in detail the bases for its analysis that coverage was unavailable under the Policies and requested that Post withdraw its tender of the Claim.

Jill Bollettieri, Vice President and General Counsel for Post Consumer Brands signed the Claim Withdrawal Agreement, dating it December 19, 2016. Above Ms. Bollettieri's signature, the Claim Withdrawal Agreement states, "As a duly authorized representative of Post Holdings, Inc. and Post Foods, LLC, the undersigned agrees to the terms set forth in this letter."

The Claim Withdrawal Agreement states that "[t]his letter memorializes Liberty Mutual's analysis and Post's agreement to withdraw its tender of the Claim, subject to each party's continued reservation of all rights under the Policies."

The Claim Withdrawal Agreement states, "[i]f anything in this letter is inconsistent with your understanding of our agreement, please let me know immediately." The Claim Withdrawal Agreement also states that Liberty Mutual:

> understands that Post has accepted Liberty Mutual's evaluation and conclusion regarding the Claim and that Post agrees to, and hereby does, withdraw its tender of the Claim to Liberty Mutual under the Policies. In light of Post's withdrawal of the Claim, both Liberty Mutual and Post agree and acknowledge that no case, controversy, or other dispute presently exists between them with regard to the Claim.

The Claim Withdrawal Agreement further states:

> Accordingly, while the Claim remains withdrawn, the parties agree that neither party will bring a declaratory judgment action or any other proceeding, seeking adjudication of their rights and obligations under the Policies with respect to the Claim. Both parties further agree and acknowledge that all rights under such Policies and at law remain fully reserved, and that Post's present

5

> decision to withdraw its tender of the Claim shall be without prejudice to Post's right to re-tender the Claim at a future date for re-evaluation by Liberty Mutual, should the allegations in the Complaint filed in the *Krommenhock* Suit be amended further, or to the extent circumstances regarding the Claim otherwise materially change.

Post withdrew the Claim on December 19, 2016.

Another insurance carrier of Post that also issued policies to Post, Travelers, for the time period encompassed by *Krommenhock*, also denied a defense and indemnification to Post in connection with the *Krommenhock* Suit. Post and Travelers then entered into coverage litigation that lasted from February 2017 until October 2018. That case was dismissed pursuant to a settlement on October 3, 2018.

Post did not contact Liberty Mutual in connection with the *Krommenhock* Suit between December 19, 2016 and October 10, 2018, including when the Second Amended Complaint was filed on September 14, 2017.

On October 10, 2018, Post tendered the Claim for a second time via a letter ("2018 Tender Letter") to Liberty Mutual. 25. The letter enclosed a copy of the Second Amended Complaint, which had been filed on September 24, 2017, as well as a draft complaint against Liberty Mutual. The letter requested that Liberty Mutual let Post know in writing by October 26, 2018 whether Liberty will

agree to reimburse Post for past *Krommenhock* defense costs and to defend Post Foods in *Krommenhock* prospectively. The letter also stated that "Liberty's December 16, 2016 disclaimer was inappropriate."

Post filed the complaint in the instant action, *Post Holdings, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 18-cv-01741, two days later, without waiting for Liberty Mutual to respond. Post alleges that, at the time it filed its complaint in this case, it had incurred "defense costs in excess of $2,000,000" in *Krommenhock*. The Policies also provide, in the "Insuring Agreement," that:

> [Liberty Mutual] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.
> [Liberty Mutual] will have the right and duty to defend the insured against any 'suit' seeking those damages.

The word "tender" does not appear in the Policies.

On September 8, 2016, Lockton sent an email to Liberty Mutual with the subject "New Liability Loss Notification," in which it provided details "regarding this new claim notice."

On September 28, 2016, Mark DeMeuse of Liberty Mutual sent an email with the subject "Notice of New Suit," in which he acknowledged Liberty Mutual "received first notice of" *Krommenhock*.

In the December 16, 2016 Letter, Liberty Mutual denied coverage for *Krommenhock*:

7

As we explained during our call, and as set forth in some detail below, Liberty Mutual has determined that insurance coverage is not available for the Claim under the Policies.

[W]e have determined that neither a defense nor indemnity is available for Post for the Claim for several reasons.

Liberty Mutual did not allege lack of notice as a reason for denial in the December 16, 2016 Letter.

After announcing its decision to deny coverage, at the end of the December 16, 2016 Letter, Liberty Mutual included a section IV stating an agreement between Post and Liberty Mutual (the "Agreement"). The Agreement has a title:

**Post's Agreement to Withdraw its Tender of Claim, and Both Parties' Agreement that All Rights Under the Policies and At Law Remain Reserved, Including Post's Right to Re-Tender the Claim in the Future, if Warranted**

The Agreement provides that "Post agrees to, and hereby does, withdraw its tender of the Claim to Liberty Mutual under the Policies." (*Id*.) Thereafter, the Agreement spells out the effect of Post's agreement to "withdraw its tender," separated into three clauses:

> Accordingly, **[1]** while the Claim remains withdrawn, the parties agree that neither party will bring a declaratory judgment action or any other proceeding, seeking adjudication of their rights and obligations under the Policies with respect to the Claim. **[2]** Both parties further agree and acknowledge that all rights under such Policies and at law remain fully reserved, and **[3]** that Post's present decision to withdraw its tender of the Claim shall be without prejudice to Post's right to re-tender the Claim at a future date for re-evaluation by Liberty Mutual, should the allegations in the

> Complaint filed in *Krommenhock* Suit be amended further, or to the extent circumstances regarding the Claim otherwise materially change.

Liberty Mutual, in this Motion, moves for partial summary judgment. The issues on which it moves are:

> After agreeing to withdraw its initial tender on December 19, 2016, . . . Post did not notify Liberty Mutual that it again sought coverage for the *Krommenhock* Suit until its new tender of the Claim on October 10, 2018. Post cannot seek reimbursement for defense costs incurred before that date.
>
> \*   \*   \*
>
> Post has violated [three] terms of the Policies. Accordingly, Post is not entitled to pretender defense costs for each of these three additional and independent reasons.

Liberty Mutual does not seek judgment in this Motion on the issue of whether Liberty Mutual improperly denied the existence of a duty to defend under the Policies for *Krommenhock*. ["The Court can and should rule now that, regardless of any later determination on whether Liberty Mutual owes Post a duty to defend the *Krommenhock* Suit, Liberty Mutual has no obligation to reimburse Post for any defense costs incurred prior to October 10, 2018."].)

**Legal Standard**

The standard applicable to summary judgment motions is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).

## Discussion

The insurer's duty to defend is broader than its duty to indemnify. *McCormack Baron Mgt. v. American Guarantee,* 989 S.W.2d 168, 170 (Mo.banc 1999). Generally, the duty of an insurer to defend its insured is determined by comparing the language of the insurance policy with the allegations in the complaint. *Id.* "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at

170–171. Furthermore, insurer must be given notice of the complaint or pleading, which would invoke the duty to defend. *See Rocha v. Metro. Property and Cas. Ins.,* 14 S.W.3d 242, 248 (Mo.App. W.D.2000) (the insured's failure to forward copy of amended petition to insurer was unexcused and, therefore, created presumption of prejudice, and the insurer owed no duty to defend against original allegation of conspiracy); *Dickman Aviation v. U.S. Fire Ins.,* 809 S.W.2d 149, 152–153 (Mo.App. S.D.1991); *Anderson v. Slayton,* 662 S.W.2d 575, 577–578 (Mo.App. W.D.1983) ("If the failure of the insured to forward the suit papers to the insurer is unexcused, prejudice automatically follows from the denial to the insurer of any opportunity to defend against the claim."); and *Hawkeye–Sec. Ins. Co. v. Iowa Nat. Mut. Ins. Co.,* 567 S.W.2d 719, 721 (Mo.App.K.C.D.1978) (even if insurer owed a duty to defend insured, insured's claim against insurer for defense was waived by insured's failure to notify insurer of the claim and suit). *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 620 (Mo. Ct. App. 2001).

Defendant argues that since Plaintiffs withdrew the original tender of the *Krommenhock* claim, it was not obligated to defend and is not responsible for any defense costs which occurred prior to Plaintiffs' subsequent notice on October 10, 2018. Plaintiffs essentially argue that it notified Defendant on September 8, 2016 and that the subsequent withdrawal of the "tender of the claim" has no impact on

11

the original "notice of the claim." As such, Plaintiffs contend that they have complied with the terms of the policies and Defendant cannot avoid its duty to defend/pay costs of the defense of the *Krommenhock* suit from inception.

> In order to invoke or trigger an insurer's duty to defend in some jurisdictions, an insured must properly tender its defense request to the insurer as a condition precedent, for there is no duty to defend if the insured fails to tender the suit to the insurer for defense.

§ 200:29.Generally, 14 Couch on Ins. § 200:29 (footnotes omitted).

> A tender of a defense requires *only* that the insured place the insurer on notice of the claim. An insured is not required to expressly request a defense in order to trigger the duty to defend. The notice standard places the burden of communication on the insurer who is better positioned, in terms of expertise and resources and generally regarded as a more sophisticated party than the insured.

§ 200:32.What constitutes tender of defense; sufficiency, 14 Couch on Ins. § 200:32 (footnotes omitted)(emphasis added).

Plaintiff's position that giving notice and tendering the claim are distinct acts is belied by the record. Although the Agreement withdraws the "tender of the claim," Plaintiff *only* gave "notice" of the claim; there was no separate "tender," but Plaintiff agreed to withdraw the "tender." Indeed, having withdrawn the "tender," Plaintiff subsequently demanded reconsideration and asked Liberty to agree to reimburse Plaintiffs for past defense costs and to defend them in the *Krommenhock* case. The course of action taken by the parties establishes that up

until Plaintiff's attempted distinction, the parties regarded notice and tender as synonymous. Under Plaintiff's view, the Withdrawal Agreement is meaningless.

> It is common-almost universal-for liability insurance policies to give the insurer both the *right* to control the defense of any claim covered by the policy and the *duty* to provide that defense … . The *right* to control the defense, coupled with the corresponding duties of the insured to give prompt notice of any claim and forward relevant papers, to cooperate with the insurer in that defense, to avoid assuming liability, and to refrain from settling the claim or incurring expenses in defense of it without the consent of the insurer, is important to the insurer as a mechanism for protecting and minimizing its duty of indemnification. If it is to be liable for any judgment rendered against the insured, it has a right to make certain that a proper defense is made to the claim and that unwarranted, overstated, and collusive claims are exposed and defeated … .

§ 4:44.Pre-tender defense costs, 1 Insurance Claims and Disputes § 4:44 (6th ed.).

Plaintiff also argues that the Claim Withdrawal Agreement lacked consideration. Plaintiff's argument is without merit.

> "A contract consisting of mutual promises to undertake some legal duty or liability between parties is a bilateral contract." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 116 (Mo. banc 2018) (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. banc 2014)). Under Missouri law, a mutual exchange of promises to [] is sufficient consideration so long as those promises are not illusory. *Id.* "A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." *Id.* (quoting *Baker*, 450 S.W.3d at 776).

*Morgan v. Ferrellgas, Inc.*, No. 4:19-CV-00910-SRB, 2020 WL 201059, at *3 (W.D. Mo. Jan. 13, 2020).

Defendant promised to refrain from seeking a declaratory judgment that the policy did not cover the *Krommenhock* case. Plaintiffs agreed to withdraw the

claim for coverage, which included defending the *Krommenhock* case. However, all parties satisfied their respective obligations under the agreement until Plaintiffs sought coverage again in October, 2018. The agreement does not fail for lack of consideration.

Plaintiffs also argue that Defendant breached the insurance policy by denying coverage, and therefore, as insureds, they were free to forego any conditions precedent to coverage. This argument is unavailing. As Defendant correctly argues, Plaintiffs agreed with Defendant's position of noncoverage and entered into the Claim Withdrawal Agreement, which withdrew Plaintiffs' demand for coverage.

**Conclusion**

Based upon the foregoing analysis, the record establishes that no material issues of fact are in dispute and Defendant is entitled to judgment as a matter of law. Defendant has no obligation to reimburse Plaintiffs for any "pre-tender" defense costs incurred in connection with the *Krommenhock* Suit under the Policies.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment, [Doc. No. 27], is granted.

**IT IS FURTHER ORDERED** that judgment will be entered after the resolution of the remaining issues herein.

Dated this 23rd day of March, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE