UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| POST HOLDINGS, INC. and POST FOODS, LLC, | ) | |
| Plaintiff, Counter-Defendants, | ) | |
| vs. | ) | Case No. 4:18CV1741HEA |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) | |
| Defendants, Counter-Plaintiff. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Cross Motions for Summary Judgment, [Doc. No.'s 36-Plaintiff and 54-Defendant]. The parties oppose the respective motions. For the following reasons, Defendant's Motion will be granted.

**Facts and Background**

Liberty Mutual Fire Insurance Company is an insurance company that is incorporated in Wisconsin and maintains its principal place of business in Boston, Massachusetts. Post Holdings and Post Foods are incorporated in Missouri and maintain their principal place of business in St. Louis, Missouri.

Liberty Mutual issued two Policies to Post Holdings, Inc., as first Named Insured. Those Policies also name Post Foods, LLC, as one of several additional

Named Insureds. The first Policy, TB2-641-444457-034, was effective from October 1, 2014, to October 1, 2015. The first Policy was then renewed, TB2-641-444457-035, for the policy period of October 1, 2015, to October 1, 2016. Post Holdings and Post Foods are each a "Named Insured" under the Policies. The Policies are valid and binding contracts between Liberty Mutual and Post.

The Policies include the following coverage grant:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE**

**LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any

"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [. . . ]

**b.** This insurance applies to "bodily injury" and "property damage"

only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" [… ]

**c.** "Bodily injury" or "property damage" which occurs during the

policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section

II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer.

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

The Policies cover "'damages because of 'bodily injury' . . . caused by an 'occurrence'"

The Policies contain the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

The Policies contain the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took Place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

* * *

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

* * *

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

10. The Policies define "bodily injury" as:

**a.** Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

**b.** Mental anguish, shock or humiliation arising out of injury as defined in paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

"Occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

On August 29, 2016, underlying claimants Debbie Krommenhock and Stephen Hadley filed a putative class action against Post Foods in the United States District Court for the Northern District of California, captioned *Debbie Krommenhock, et al. v. Post Foods LLC*, No. 16-cv-04958 (N.D. Cal.) (the "*Krommenhock* Suit"). On November 14, 2016, the plaintiffs in the *Krommenhock* Suit filed a First Amended Complaint. On September 14, 2017, the plaintiffs in the

*Krommenhock* Suit filed a Second Amended Complaint ("Second Amended Complaint").

The original Complaint, First Amended Complaint, and Second Amended Complaint do not differ in any manner that is material to Liberty Mutual's duty to defend under the Policies.

The *Krommenhock* Suit is a class action brought on behalf of California consumers. Post's legal counsel has testified that the *Krommenhock* Suit is a "consumer fraud class action" and that the typical claim submitted by Post under commercial general liability policies was a "broken tooth" claim made by a cereal eater.

The *Krommenhock* Suit alleges causes of action under California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and causes of action for breaches of express and implied warranties. The Complaint alleges that Post "manufactures, markets and sells a wide variety of breakfast cereals." It claims that many of Post's cereals "contain high amounts of sugar, such that their regular consumption is likely to contribute to excess added sugar consumption and, thereby, increased risk for and contraction of chronic disease." The Complaint alleges Post "actively maintains a policy and practice of labeling high-sugar cereals . . . with various health and

wellness claims that suggest the cereals are healthy, when they are not." The Complaint collects a lengthy, non-exclusive list of allegedly misleading statements made in the labeling of dozens of Post cereals. The Complaint then alleges that Post affirmatively misrepresents that its cereals promote bodily health, because the sugar content in those cereals is "highly likely to contribute" to "increased risk for, and actual contraction of, chronic disease, substantially harming both the human digestive system and overall human health." The Complaint alleges when buying Post cereals, the plaintiffs were seeking to buy those that were "healthy to consume," but Post's misrepresentations induced them to buy "products [that] are not healthy . . . instead their consumption increases the risk of CHD, stroke, and other morbidity." It alleges that the plaintiffs would not have bought the cereals but for the misrepresentations, and that "Post cereals and granolas cost more than similar products without misleading labeling, and would have cost less absent the misleading health and wellness claims." The Complaint alleges that, as a result of Post's practices, the named plaintiffs themselves "suffered bodily injury in the form of increased risk of CHD, stroke, and other morbidity." *Krommenhock* also alleges that the consumption of Post cereals "contribute[s] to excess added sugar consumption, and thereby increased risk for, and actual contraction of, chronic disease, substantially harming . . . overall human health."

The Complaint pleads five causes of action. The plaintiffs seek damages in the form of restitution and disgorgement by Post of "funds that may have been acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL, or CLRA." The *Krommenhock* plaintiffs also seek "[a]n Order requiring Post to pay all statutory, compensatory, and punitive damages permitted under the causes of action alleged herein." The plaintiffs do not specifically plead that they are seeking damages for their alleged "increased risk of . . . bodily injury."

On September 8, 2016, Post initially tendered a claim ("Claim") to Liberty Mutual for coverage in connection with the *Krommenhock* Suit. Liberty Mutual sent a letter dated December 16, 2016 to Jeanie Wescott, Director of Risk Management for Post Holdings ("Claim Withdrawal Agreement"), in which Liberty Mutual set forth in detail the bases for its analysis that coverage was unavailable under the Policies and requested that Post withdraw its tender of the Claim.

Post made no changes to the Claim Withdrawal Agreement, nor did it seek any clarification or ask Liberty Mutual any follow-up questions regarding any part of it before signing.

Jill Bollettieri, Vice President and General Counsel for Post Consumer Brands signed the Claim Withdrawal Agreement, dating it December 19, 2016. Above Ms. Bollettieri's signature, the Claim Withdrawal Agreement states, "As a duly authorized representative of Post Holdings, Inc. and Post Foods, LLC, the undersigned agrees to the terms set forth in this letter."

The Claim Withdrawal Agreement states that "[t]his letter memorializes Liberty Mutual's analysis and Post's agreement to withdraw its tender of the Claim, subject to each party's continued reservation of all rights under the Policies." The Claim Withdrawal Agreement states, "[i]f anything in this letter is inconsistent with your understanding of our agreement, please let me know immediately." The Claim Withdrawal Agreement also states that Liberty Mutual:

> understands that Post has accepted Liberty Mutual's evaluation and conclusion regarding the Claim and that Post agrees to, and hereby does, withdraw its tender of the Claim to Liberty Mutual under the Policies. In light of Post's withdrawal of the Claim, both Liberty Mutual and Post agree and acknowledge that no case, controversy, or other dispute presently exists between them with regard to the Claim.

The Claim Withdrawal Agreement further states:

> Accordingly, while the Claim remains withdrawn, the parties agree that neither party will bring a declaratory judgment action or any other proceeding, seeking adjudication of their rights and obligations under the Policies with respect to the Claim. Both parties further agree and acknowledge that all rights under such Policies and at law remain fully reserved, and that Post's present decision to withdraw its tender of the Claim shall be without prejudice to Post's right to re-tender the Claim at a future date for re-evaluation by Liberty Mutual, should the allegations in the

> Complaint filed in the *Krommenhock* Suit be amended further, or to the extent circumstances regarding the Claim otherwise materially change.

Post did not contact Liberty Mutual in connection with the *Krommenhock* Suit between December 19, 2016 and October 10, 2018, including when the Second Amended Complaint was filed on September 14, 2017.

On October 10, 2018, Post tendered the Claim for a second time via a letter ("2018 Tender Letter") to Liberty Mutual. The letter enclosed a copy of the Second Amended Complaint, which had been filed on September 14, 2017, as well as a draft complaint against Liberty Mutual. The letter requested that Liberty Mutual let Post know in writing by October 26, 2018 whether Liberty would agree to reimburse Post for past *Krommenhock* defense costs and to defend Post Foods in *Krommenhock* prospectively.

Post filed the complaint in the instant action, *Post Holdings, Inc. v. Liberty Mut.Fire Ins. Co.*, No. 18-cv-01741, two days later.

Ms. Bollettieri declares that her understanding of the Agreement was that both parties were reserving all rights and were foregoing a legal fight about the issues for the time being, and the Agreement allowed either party to change their mind at any time because it reserved all rights to both parties. She further declares that when she signed the Agreement, *Krommenhock* was in the early stages and Motions to Dismiss were pending. At the time, Post did not know if *Krommenhock*

would be dismissed or if it would be a significant case. If it would be dismissed, Post would not have wanted to waste the resources on pursuing coverage that would not have justified the cost. The case, however, went forward, at significant cost to Post. Additionally, Travelers sued Post in February 2017, seeking a declaratory judgment under a commercial general liability policy substantially similar if not identical to the Liberty Mutual policies at issue in this litigation. Eventually, the case against Travelers settled in early October 2018, and Post decided that, following the dismissal of the Travelers lawsuit, it now had the time, resources, and reasons to pursue Liberty Mutual, which it did by filing this lawsuit. Finally, Post did not engage outside counsel with insurance experience to advise it on coverage until after Travelers filed its lawsuit in February 2017. Post's view of the strength of its case changed between December 2016 and October 2018.

Ms. Bollettieri testified in her deposition that when the Agreement states that "Liberty Mutual understands that Post has accepted Liberty Mutual's evaluation and conclusion regarding the Claim," Post understood that to be a statement that Post "understood that was Liberty's position."

**Legal Standard**

The standard applicable to summary judgment motions is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).

**Discussion**

Missouri law applies to this diversity insurance dispute. The interpretation of an insurance policy is a question of law. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012) (quotation omitted). "An insurer's duty to defend a suit arises if there is potential or *even possible* liability to pay based

upon the facts at the outset of the case. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). The duty to defend is analyzed by comparing the language of the policy with the allegations in the complaint, and if the complaint alleges facts that merely give rise to a potential claim within coverage, the insurer has a duty to defend. *Id*. at 170-71." *Argonaut Great Cent. Ins. Co. v. Lincoln Cty., Missouri*, 952 F.3d 992, 995–96 (8th Cir. 2020). "Although Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim *potentially* within the policy's coverage,' *see McCormack*, 989 S.W.2d at 170 (emphasis added), use of the word "potentially" does not render boundless the duty to defend. *Interstate Bakeries Corp.*, 686 F.3d at 544.

The determinative issue is whether the *Krommenhock* Suit alleges "bodily injury" such that the duty to defend is triggered. The Policies define "bodily injury" as: Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and Mental anguish, shock or humiliation arising out of the bodily injury.

Although the *Krommenhock* Suit contains references to "bodily injury," upon analysis, it is abundantly clear that no "bodily injury" is alleged to have been *sustained* by the *Krommenhock* plaintiffs. The allegations in the underlying suit detail that there is a chance someone eating the sugary cereals may develop certain

conditions as a result, but nowhere contained in the allegations do the *Krommenhock* plaintiffs claim they have actually suffered any of the potential conditions. Critically, Plaintiff fails to identify any **claim** in the underlying complaints that explicitly allege bodily injury sustained by the *Krommenhock* plaintiffs. The underlying descriptive allegations of the possible harms of sugary cereal recited by a plaintiff cannot be converted into possible, but not asserted, cause of action. These assertions in the complaint without a claim the *Krommenhock* plaintiffs actually experienced the adverse effects of the cereal is not sufficient to give rise to the duty to defend.

The *Krommenhock* suit contains a count pursuant to the California Consumer Legal Remedies Act ("CCLRA"). Plaintiff argues that the CCLRA allows recovery for bodily damages: "[a]ny consumer who suffers any damage . . . may bring an action against that person to recover or obtain . . . (1) Actual damages." Cal. Civ. Code § 1780(a). Plaintiff contends that this provision gives rise to a request for damages for bodily injury. Plaintiff, however, cannot overcome the lack of any allegations that the underlying plaintiffs claim *any* damages related to bodily injury they actually sustained, even though bodily injury could fall within the statutory definition.

Likewise, even assuming, *arguendo*, that the *Krommenhock* suit allegations of potential bodily injury and increased risk of injury or emotional injury, the

policy does not cover emotional damages unless they result from bodily injury. Missouri courts have concluded that the common meaning of the phrase "bodily injury" "refers to physical conditions of the body and excludes mental suffering or emotional distress." *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 454 (Mo. Ct. App. 1998) (citing cases); *American Family Mut. Ins. Co. v. Wagner*, No. 05-4394-CVC-NKL, 2007 WL 1029004, at *3 (W.D. Mo. Mar. 29, 2007) ("emotional injuries are not considered bodily injuries within the meaning of the policy unless they arise from bodily injuries; i.e., unless the emotional distress was caused by some physical injury"). The Policies include within the definition of the term "bodily injury" to specifically cover "mental anguish or other mental injury" only if it is caused by the "bodily injury." "From this definition, a reasonable person placed in the position of the insured would have understood the term "bodily injury" to exclude coverage for any and all emotion type injuries, including any physical symptoms that might be caused by or tied to the emotional injury, unless the emotional injury was caused by actual physical bodily contact." *Heacker v. Am. Family Mut. Ins. Co.*, No. 09-4270-CV-W-GAF, 2011 WL 124301, at *8 (W.D. Mo. Jan. 14, 2011), *aff'd sub nom. Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724 (8th Cir. 2012); *State Farm Fire & Cas. Co. v. Dado's Cafe, Inc.*, 421 F. Supp. 3d 720, 726 (E.D. Mo. 2019).

Because there are no claims for bodily injury in the underlying suit within the terms of the Policies, Defendants owe no duty to defend Plaintiff. Plaintiff agrees that absent a duty to defend, there is no duty to indemnify.

## Conclusion

Based upon the foregoing analysis, the record establishes that the underlying *Krommenhock* suit contains no claim for bodily injury within the policies at issue and Defendant is entitled to judgment as a matter of law. Defendant has no duty to defend or indemnify Plaintiff connection with the *Krommenhock* Suit under the Policies.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Liability, [Doc. No. 36], is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 54] is granted.

A separate judgment is entered this date.

Dated this 30th day of October, 2020.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE